2022 IL App (1st) 210488

FIRST DISTRICT
SIXTH DIVISION
May 20, 2022

No. 1-21-0488

| | | |
|---|---|---|
| COLIN KISSOON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 9140 |
| BARBARA VLCEK and UNKNOWN OCCUPANTS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | Honorable |
| | ) | Raymond W. Mitchell, |
| (Cheryl Simpson, Appellant.) | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff, Colin Kissoon, brought an action for specific performance of a real estate contract and ejectment against defendant, Barbara Vlcek, and unknown occupants of the premises at issue. The trial court denied defendant's motion to dismiss and awarded plaintiff possession of the premises on his summary judgment motion. On plaintiff's motion, the court ordered the eviction of the unknown occupants. Cheryl Simpson, as the unknown occupant, filed *pro se* an unsuccessful motion to stay the eviction and for reconsideration and now appeals from the denial of her motion.

¶ 2   On appeal, Simpson contends *pro se* that the summary judgment, denial of dismissal, and denial of reconsideration were erroneous. Plaintiff responds that Simpson does not have standing to appeal, that the summary judgment, denial of dismissal, and denial of reconsideration were not erroneous, and that Simpson should be sanctioned. We have taken with the case plaintiff's motion

to dismiss the appeal and for sanctions and Simpson's motion for sanctions. For the reasons stated below, we dismiss this appeal for lack of jurisdiction and Simpson's lack of standing to appeal, and we deny plaintiff's and Simpson's motions for sanctions.

¶ 3                                    I. JURISDICTION

¶ 4       On plaintiff's August 2019 complaint as amended, the trial court granted plaintiff summary judgment on March 8, 2021, and denied defendant's motion to dismiss on March 10, 2021. The court issued an eviction order against unknown occupants on March 31, 2021. In the trial court, Simpson filed her appearance and motion for reconsideration and stay, but no petition to intervene, on April 2, 2021. The court denied Simpson's motion on April 20, 2021, and she filed her notice of appeal on April 29, 2021. For the reasons explained below (*infra* ¶¶ 54-59), this court lacks jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) or Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017) governing appeals of final judgments or orders in civil cases.

¶ 5                                    II. BACKGROUND

¶ 6       Plaintiff filed his complaint for specific performance and breach of contract in August 2019, alleging that defendant had claimed to own and have the authority to convey certain residential property on Austin Boulevard in Chicago (Property). In July 2018, plaintiff offered to buy the Property for $110,000 and defendant accepted and provided plaintiff a signed residential real estate contract (Contract) with a closing date of September 5, 2018. However, defendant informed plaintiff before that date "that she was unable to complete the sale closing due to the Property being held in a land trust and that additional steps were required for her to transfer title to the Property including opening a probate estate for her deceased husband, Frank Vlcek Jr." (Frank). Plaintiff alleged in the complaint that, to his knowledge and belief, defendant was "the beneficiary, beneficial interest holder, and/or the power of direction holder for Suburban Trust and

Savings Bank or a successor institution" as trustee "under a Trust Agreement dated the 23rd of January, 1968 and identified as Trust No. 1913" (Land Trust). In September 2018, the parties entered into an amendment to the Contract (Amendment) under which plaintiff paid $2500 earnest money to defendant "for probate proceedings to resolve the title issues and allow [her] to convey title," plaintiff would extend his mortgage contingency, and the closing would be no later than November 1, 2018. Plaintiff paid the $2500 to defendant but the closing did not occur as scheduled, nor as the parties rescheduled it to December 18, 2018. Instead, defendant informed plaintiff in June 2019 that she did not intend to proceed with the sale of the Property.

¶ 7    Both counts of the complaint alleged that the Contract was valid and enforceable and that plaintiff substantially performed his duties thereunder and was willing and able to continue doing so and purchase the Property while defendant failed and refused to perform her duties thereunder. Count I sought specific performance—defendant's conveyance of the Property to plaintiff, plus attorney fees and costs—and alleged that plaintiff had no adequate remedy at law because the Contract concerned the sale of real estate. Count II alleged breach of contract for failing to convey the Property to plaintiff and failing to act in good faith and fair dealing as required by the Contract, alleged that plaintiff incurred damages including "payment of earnest money, loan fees and costs, and the use and value of the Property which [he] would have been entitled through his ownership of the Property," and sought damages plus attorney fees and costs as provided in the Contract.

¶ 8    Attached to the complaint were copies of the Contract and Amendment and plaintiff's September 2018 check for $2500 payable to Theodore London. The Contract had been recorded with the county recorder of deeds in June 2019. The Contract line identifying the seller first named Frank in typewriting but then was completed in handwriting with defendant's name and her initials and plaintiff's initials next to the change. The Contract provided for $1000 earnest money and a purchase price of $110,000; another sum had been typewritten but was scratched out, $120,000

was handwritten and then the 2 was overwritten with a 1, and the changes bore the initials of plaintiff and defendant. The Contract provided that the Property came with "all personal property" except a deep freezer. The Contract provided that the prevailing party in any litigation on the Contract was entitled to reasonable attorney fees and costs. Each page of the Contract bore plaintiff's initials, various pages bore defendant's initials, and the last page was apparently signed by plaintiff and defendant. The Amendment was also apparently signed by plaintiff and defendant.

¶ 9                                A. First Motion to Dismiss

¶ 10    Defendant appeared *pro se* in November 2019, with her appearance and other documents she filed reflecting the Property as her residential address.

¶ 11    Defendant filed a motion to dismiss in December 2019, alleging that plaintiff did not pay the $1000 earnest money in the Contract and that the original purchase price was $120,000 but plaintiff changed it to $110,000 and forged defendant's initials. The motion also alleged that plaintiff repeatedly postponed the closing with excuses, that he included "all personal property" in the Contract and "would be exploiting an elderly disable[d] widow out of her worldly goods," and that he knew in June 2019 that the Contract was null and void but recorded the Contract to cloud defendant's title and keep her from selling the Property to other buyers. Defendant argued that the check did not prove plaintiff paid her $2500 in earnest money as alleged.

¶ 12    Attached to the motion was defendant's April 2019 affidavit or notarized declaration that she was the sole owner of the Property under Frank's will and the probate thereof and any purported contract or agreement for sale of the Property before January 1, 2019, was null and void.

¶ 13    Plaintiff responded to the motion to dismiss, arguing that it denied well-pled allegations in the complaint and did not plead or interpose an affirmative matter defeating the complaint so that it was not a proper motion to dismiss. Regarding the check payable to London, plaintiff stated his

belief or understanding that London was defendant's counsel in Frank's probate working "to clear title to the Property" as provided in the Amendment.

¶ 14     Attached to plaintiff's response was his affidavit that (1) the copy of the Contract attached to the complaint was a true copy he received from defendant; (2) he paid the $2500 earnest money, obtained a mortgage loan commitment, and was ready and willing to close on the Property; (3) it was his understanding that the closing was delayed due to issues with Frank's will and the probate thereof; (4) the $110,000 purchase price was in the Contract he received; and (5) he did not receive defendant's April 2019 document purporting to declare the Contract null and void. Also attached to plaintiff's response was a copy of an October 2018 title insurance commitment for the Property listing the policy amount as $110,000.

¶ 15     Replying in support of her motion to dismiss, defendant filed an affidavit that the purchase price in the Contract was altered, she did not initial that alteration, it was her understanding that the closing was delayed by plaintiff, she did not obtain the title insurance commitment, plaintiff did not pay the $1000 earnest money in the Contract, and plaintiff knew the Contract was null and void as of December 31, 2018.

¶ 16     The court denied the motion to dismiss in February 2020, finding that the motion did not raise an affirmative matter but instead raised factual disputes with well-pled allegations in the complaint that cannot be argued in such a motion. The court found that the parties were disputing the validity of the Contract.

¶ 17                              B. Answer and Other Matters

¶ 18     In February 2020, plaintiff subpoenaed the records of Chicago Title Land Trust Company (Trust Company) regarding the Land Trust.

¶ 19     Counsel appeared for defendant in March 2020, but defendant filed a *pro se* answer less than a week later. She alleged that he offered her $110,000 for the Property in July 2018, but she

rejected that offer and the Contract reflected the agreed $120,000 price. She also alleged that she did not have an attorney for the sale of the Property so that plaintiff could not have dealt with her attorney as he alleged. Defendant alleged that she did not alter the Contract, but plaintiff forged her initials, and that recording the Contract so altered placed a cloud on her title. Attached to the answer was a copy of her April 2019 affidavit or notarized declaration that she was the sole owner of the Property under Frank's will and the probate thereof and that any contract to sell the Property before January 1, 2019, was null and void.

¶ 20    Defendant's counsel filed a motion to withdraw the day after defendant's *pro se* answer. The court issued orders granting counsel leave to withdraw in March and July of 2020. In August 2020, the court issued an order providing in relevant part that "Defendant is proceeding *pro se* and Cheryl Simpson shall not represent Defendant."

¶ 21    In December 2020, defendant filed a motion for a cease and desist order against plaintiff and his counsel, alleging that they harassed her including visiting her home in November 2020. In part, the motion alleged or recited that defendant's "power of attorney Cheryl Simpson" told the court in July 2020 of plaintiff's "taunting actions" and requested a cease and desist order. The court denied the motion in December 2020.

¶ 22                    C. Amended Complaint

¶ 23    Also in December 2020, with leave of court, plaintiff filed his amended complaint adding a claim for ejectment to the existing claims for specific performance and breach of contract. The ejectment count alleged that defendant resided at the Property and there may have been other, unknown, occupants of the Property. Plaintiff alleged that the Trust Company, as trustee of the Land Trust, sold him the Property in November 2020 when Rodlynn Gregory was the sole owner of the beneficial interest in the Land Trust and the sole holder of the power of direction thereunder. Plaintiff alleged that "Defendants" resided on the Property but had no claim to the title of the

Property and unlawfully withheld possession of the Property after November 2020. Plaintiff sought a judgment granting him possession of the Property, ejecting defendant and unknown occupants from the Property, and awarding him damages and costs for withholding possession.

¶ 24    The specific performance and breach of contract counts were substantially the same as in the original complaint, except that (1) both counts were pled in the alternative to the new ejectment count; (2) plaintiff no longer alleged that, to his knowledge and belief, defendant was the beneficiary, beneficial interest holder, or power of direction holder for the Land Trust; and (3) the amended complaint substituted an allegation that defendant used plaintiff's earnest money other than as the parties had agreed in the Amendment for the original complaint's allegation that defendant failed to act in good faith and fair dealing.

¶ 25    Attached to the amended complaint were copies of the Land Trust agreement and the November 2020 deed in which the Trust Company conveyed the Property to plaintiff. The Land Trust agreement, adopted in 1968 and amended in 1982, provided that the beneficiary of the Land Trust was "solely" Frank until his death and then, unless Frank had disposed of his rights, his niece Gregory and sister Blanche Strong in joint tenancy. It similarly provided that the trustee would not sell or convey the Property without written direction from Frank or, after his death, Gregory and Strong jointly. Also attached to the amended complaint, as in the original complaint, were the Contract and Amendment and plaintiff's $2500 check to London.

¶ 26    Upon filing of the amended complaint, summons was issued for the unknown occupants of the Property.

¶ 27                              D. Summary Judgment

¶ 28    Plaintiff filed a motion for summary judgment in January 2021. He argued that he was now the owner of the Property pursuant to a deed from the Trust Company, the previous legal owner of the Property and trustee of the Land Trust. The Trust Company issued the deed when Gregory

was the sole beneficiary of the Land Trust and sole holder of the power of direction after Frank's death (joint beneficiary Strong having also died). Defendant had no legal or beneficial interest in the Property, plaintiff argued, her possession was unlawful, and he was entitled to ejectment. Plaintiff argued that he had shown his title to the Property and thus shifted the burden to defendant to overcome plaintiff's *prima facie* case but she had not done so.

¶ 29    Attached to the motion for summary judgment were copies of the Land Trust agreement as amended, the recorded 1968 deed by which the Property was conveyed into the Land Trust, the recorded November 2020 deed from the Trust Company to plaintiff, Strong's 1994 death certificate, and the Contract and Amendment between plaintiff and defendant.

¶ 30    Defendant responded to the summary judgment motion, arguing that the February 2020 order denying her motion to dismiss refuted his claim that he now owned the Property because it "clearly outlines the positions of the parties." Defendant argued that she had been in possession of the Property for decades as Frank's wife and plaintiff never had possession of the Property to regain it in an ejectment action. She also claimed that "plaintiff has not offered any documentation showing he once own[ed] the property." She noted that Gregory was not named as a defendant and did not appear as a party. She argued that plaintiff claimed to have purchased the property from Gregory but provided no affidavit by himself or Gregory or other documentation of a closing between himself and Gregory. Defendant argued that the Trust Company could not deed the Property to plaintiff as trustee because Frank failed to renew the Land Trust in 2008. She also argued that the claim for specific performance "became moot [and] frivolous" once plaintiff learned that defendant did not have title to the Property. She argued that plaintiff's discovery requests constituted harassment to prolong frivolous litigation and claimed that obtaining and using the Land Trust agreement was "a petty crime."

¶ 31     Attached to defendant's response was a copy of a 2008 letter from the Trust Company to Frank urging him to sign a renewal of the Land Trust for another 20 years as it had a 20-year term. The letter stated that if he did not sign and return the renewal. "*the property will still be in trust; however, we will be unable to act as trustee.*" (Emphasis in original.)

¶ 32     Plaintiff replied in support of his summary judgment motion, arguing that defendant failed to rebut any of the documentation he provided in support of his ejectment claim. An ejectment claim does not require a plaintiff to have prior possession but proof of title creating a *prima facie* case that the defendant must refute. As to the sale by Gregory, plaintiff argued that he duly alleged that he purchased the Property from Gregory and defendant failed to refute that well-pled allegation. As to the Trust Company, plaintiff noted that he provided a copy of the deed placing the Property in the Land Trust and argued that the title of the Property remained in the Land Trust until it was conveyed to him in November 2020. He argued that the letter provided by defendant corroborated that insofar as it stated that the Property would still be in the Land Trust even if Frank did not renew. Plaintiff noted that he was not seeking summary judgment on his specific performance claim and argued that its validity was therefore irrelevant. He argued that the February 2020 order merely denied defendant's motion to dismiss and did not determine any aspect of the case.

¶ 33     On March 8, 2021, following arguments, the trial court granted plaintiff's summary judgment motion on his ejectment claim. Such a claim consists of (1) the plaintiff having possession of the premises after obtaining legal title, (2) the defendant subsequently taking possession of the premises, and (3) the defendant at present continuing to unlawfully withhold possession from the plaintiff. Moreover, a plaintiff does not have to prove actual entry but only his or her right to possession, so that an ejectment claim depends on the strength of the plaintiff's title rather than the weakness of the defendant's claim to title. Plaintiff showed that he bought the

Property from Trust Company and Gregory, the beneficiary and power of direction holder under the Land Trust agreement. "From a review of the land trust documents supporting Plaintiff's motion, it is clear that Defendant has no ownership interest in the property—and never did. It is undisputed that [defendant] continues to withhold possession of the property from" plaintiff. Defendant presented no evidence challenging the validity of plaintiff's deed from the Trust Company, and though defendant argued otherwise, the court had not ruled earlier on the validity of that deed. Defendant having failed to refute plaintiff's *prima facie* evidence of title, plaintiff was entitled to an order granting him possession of the Property and the court so ordered against defendant and unknown occupants. The order stated that it was a final disposition of the case.

¶ 34    The order also noted that the court was informed in February 2021 of defendant's death. After extending condolences to her family, the court noted that she "litigated with great gusto but made assertions devoid of truth." Contrary to her claims that plaintiff's counsel acted improperly, they "conducted themselves with the utmost of probity" and "showed a remarkable generosity of spirit in confronting baseless allegations made against them."

¶ 35                                    E. Second Motion to Dismiss

¶ 36    Defendant filed a motion to dismiss in January 2021. She noted that the court had found in denying her first motion to dismiss that the validity of the Contract was in dispute and that the court had not since ruled on its validity. Defendant argued that plaintiff obtained the "private" Land Trust agreement without leave of the court; that is, that he engaged in misconduct and an unlawful invasion of privacy with his "invasion of the non-public trust." Defendant argued that plaintiff did not pay the $1000 earnest money and did not prove that he applied for or received a mortgage loan as required by the Contract. She argued that plaintiff demonstrated his awareness that the Contract was null and void when he alleged in the complaint that defendant told him in early June 2019 that the sale would not proceed. She alleged that plaintiff recorded the Contract to

"cloud her title" to the Property and keep her from selling it for $220,000. Defendant alleged that plaintiff made a false representation when, in a December 2020 hearing, the court asked if he was willing to settle the case by paying defendant $120,000 for the Property and plaintiff's counsel replied that plaintiff had already paid and could not pay twice. Defendant alleged that the amended complaint was deficient for not attaching necessary documents; specifically, "supporting documents" for the November 2020 closing and deed.

¶ 37    Plaintiff responded to the motion to dismiss, arguing that he had stated a claim for ejectment when he showed that he was the owner of the Property but defendant was in possession of the Property. He also argued that the motion to dismiss challenged factual allegations in the complaint rather than accepting them as true and did not plead any affirmative matter that defeated his amended complaint.

¶ 38    Plaintiff also responded that he obtained the Land Trust agreement pursuant to properly issued subpoena, to which defendant did not object when he issued it. He noted that both section 2-1101 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1101 (West 2018)) and Illinois Supreme Court Rule 204(a)(4) (eff. July 1, 2014) authorize the issuance of subpoenas in discovery, which routinely includes land trust documents. Plaintiff argued that his subpoena was for documents relevant to the claims in his complaint. Plaintiff alleged that defendant reported his former and present counsel to the Attorney Registration and Disciplinary Commission for the alleged impropriety of obtaining and using the Land Trust agreement but it "took no action and closed its file." Plaintiff also alleged that defendant improperly threatened him with criminal charges for subpoenaing the Land Trust agreement. Plaintiff also alleged that defendant threatened to kill him and pointed a gun at him in November 2020 so that plaintiff obtained an anti-stalking order that same month. Thus, in addition to asking the court to deny defendant's motion, plaintiff

sought a court order declaring that his subpoena of the Land Trust agreement was lawful and proper.

¶ 39    Attached to plaintiff's response were copies of the subpoena, Land Trust agreement, deed for the Property by the Trust Company to plaintiff, and a January 2021 e-mail message from defendant to plaintiff's counsel claiming that "I am the only one to legally amend and act as trustee," that counsel engaged in "misconduct of collaboration and conspiracy" by obtaining "my non public trust information" and providing it to plaintiff, and that counsel's actions were "a class 3 felony" but counsel could still "do the right thing" and withdraw or have plaintiff's case dismissed. Also attached was plaintiff's petition for a stalking no-contact order against defendant, a November 2020 circuit court order granting it, and a December 2020 order extending it into late January 2021. The petition alleged that defendant threatened to kill plaintiff, harassed his wife and children, and falsely told the police that he had been harassing her. The latter order extending the stalking no-contact order noted that plaintiff and defendant were both in court.

¶ 40    The court denied defendant's motion to dismiss in an order of March 10, 2021, for reasons consistent with its March 8 summary judgment, and found that the "case remains disposed."

¶ 41                                  F. Eviction

¶ 42    Plaintiff filed a motion for an eviction order on March 19, 2021. He alleged that he and his family lived next door to the Property (or House as he called it in the motion), defendant lived at the Property until her February 2021 death, and plaintiff owned the Property pursuant to the order of March 8, 2021. He alleged that he personally witnessed since defendant's death:

> "a steady flow of people pulling up in their cars in front of the House, getting out of their
>
> cars, and going to the front door of the House. [Citation.] Once arriving at the front door
>
> of the House and knocking or ringing the doorbell of the House, the front door opens, a

person in the House hands a small package to the person at the front door, and the person

at the front door takes the small package, returns to their car, and drives away."

Combined with finding small plastic bags containing a residue of white powder strewn across the lawns of the Property and his home, he believed this to be "drug dealing" and feared for the safety of himself and his family next door. He argued that the "occupants of the House have no right to be there" as they are not his tenants and endanger the health and safety of the neighborhood. Plaintiff therefore sought an immediate order of eviction.

¶ 43    Attached to the motion was plaintiff's affidavit or statement—it was not notarized but certified pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2018))—reiterating the allegations in the motion and adding that he had video of the described activity. Also attached were photographs of a lawn with small plastic bags on it.

¶ 44    The court granted the motion and issued an order of eviction on March 31, 2021. The order included findings that the unknown occupants of the Property were "not Plaintiff's tenants, have no possessory rights in the Property, pose a direct threat to the health and safety of Plaintiff and Plaintiff's family and others in the vicinity, and an immediate and severe risk to the Property."

¶ 45                                          G. Simpson

¶ 46    On April 2, 2021, Simpson filed her appearance without leave of court and without filing a petition to intervene in the case. Simpson also filed that day a motion to stay the eviction order and for reconsideration of the summary judgment, claiming to be a defendant as an unknown occupant. She reiterated defendant's arguments regarding "right to privacy" over the Land Trust agreement and Frank not renewing the Land Trust in 2008. Simpson argued that the latter meant the Property reverted to Frank and the Trust Company had no authority to convey the Property to plaintiff. Instead, defendant as Frank's sole heir under his will was the owner of the Property.

¶ 47    Attached to Simpson's motion were copies of the Trust Company's 2008 letter urging Frank to renew the Land Trust and a similar letter from 1988 warning Frank that the Trust Company would "convey the property back into your name and close the trust" if Frank did not renew the Land Trust. Also attached was a copy of Frank's will and a 2018 probate order declaring defendant to be Frank's sole heir. The will declared defendant to be executor and bequeathed to her "all of the rest, residue and remainder of my estate, of every kind, nature and sort whatsoever, real, personal and mixed, legal or equitable, and wheresover situate, which I may own, possess, hold, be seized of or entitled to, or over which I may have any power of appointment at the time of my death." However, the will also provided that "I intend that on my death, any property *** which is in my name as trustee for the benefit of a named beneficiary, or which is payable to a co-owner, survivor, or named beneficiary, will pass to the survivor or beneficiary, and I instruct my Executor to make no claim thereto."

¶ 48    Plaintiff responded to the reconsideration motion, asserting that the court had admonished Simpson when she tried to appear for defendant while she was alive that Simpson was not an attorney who could appear for a party nor was she herself a party. Plaintiff argued that Simpson had no standing to file the motion, so that her appearance should be stricken, and that her motion failed to provide new evidence warranting reconsideration. Plaintiff argued that the motion was not only baseless but intended to harass him and thus sought sanctions against Simpson.

¶ 49    At the hearing on the motion, the court extended condolences to Simpson on the loss of defendant, her sister, but stated that defendant's claim was meritless. The court said that the "property was held in trust, it passed through the trust. It didn't pass to her. So if your sister didn't have a claim, how in the world would you have a claim?" Simpson argued that defendant was the beneficiary and power of direction holder for the Land Trust pursuant to Frank's will and that plaintiff's deed from the Trust Company was not in the chain of title from Frank to plaintiff. The

court found that "the trust controls over the will" and denied reconsideration. Simpson requested a stay pending appeal, which the court also denied.

¶ 50    On April 20, 2021, the court issued an order denying Simpson's motion, finding that she was not a party to the case and had no standing. Simpson filed her notice of appeal from the denial on April 29, 2021.

¶ 51                                    III. ANALYSIS

¶ 52    Simpson contends that the summary judgment, denial of defendant's motion to dismiss, and denial of Simpson's reconsideration motion were erroneous. Simpson has filed a motion for sanctions that has been taken with the case. Plaintiff responds that Simpson does not have standing to appeal; that the summary judgment, denial of dismissal, and denial of reconsideration were not erroneous; and that Simpson should be sanctioned. Plaintiff filed a motion to dismiss the appeal and for sanctions, to which Simpson replied and which we took with the case.

¶ 53    We note before proceeding that we have a transcript of only the hearing on Simpson's motion, not any of the earlier hearings or proceedings. Simpson, as the appellant, bears the burden of presenting a sufficiently complete record to support her claims of error. *In re Julie M.*, 2021 IL 125768, ¶ 57. Error is never presumed on appeal but must be affirmatively shown by the record, and any doubts arising from the incompleteness of the record will be resolved against the appellant. *In re Linda B.*, 2017 IL 119392, ¶ 43.

¶ 54                              A. Standing and Jurisdiction

¶ 55    We shall first consider the threshold issue of Simpson's standing to appeal and the related issue of whether we have jurisdiction in this matter. See *MidFirst Bank v. McNeal*, 2016 IL App (1st) 150465, ¶ 12 (this court has a duty to consider its jurisdiction *sua sponte*).

¶ 56    A nonparty can become a party to civil litigation by intervention, but a timely application to intervene must be made. *Id.* ¶ 15 (citing 735 ILCS 5/2-408 (West 2012)). "A person desiring to

intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file." 735 ILCS 5/2-408(e) (West 2018).

¶ 57     Standing concerns whether a litigant is entitled to have a court decide the merits of a dispute or an issue and requires some injury to a legally recognized right. *In re C.H.*, 2018 IL App (3d) 180089, ¶ 9. Even a right to be heard in the trial court does not necessarily give a nonparty the right to appeal that court's decision. *Id.* ¶ 11. A nonparty may have standing to appeal if he or she has " 'a direct, immediate and substantial interest in the subject matter of the litigation which would be prejudiced by the judgment or benefit by its reversal.' " *Id.* ¶ 12 (quoting *St. Mary of Nazareth Hospital v. Kuczaj*, 174 Ill. App. 3d 268, 271 (1988)). A nonparty is prejudiced when his or her legal right is affected by the challenged judgment or order, while a speculative, theoretical, inconsequential, or remote interest is insufficient to grant appeal rights. *Id.* Whether a litigant has standing is a legal question reviewed *de novo*. *Id.* ¶ 9.

¶ 58     Illinois Supreme Court Rule 303 (eff. July 1, 2017) provides that a notice of appeal must be filed within 30 days of a final judgment or order "or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or a nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Section 2-1203 of the Code provides for postjudgment motions in nonjury cases by "any party" filed "within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1203 (West 2018). Thus, "by its express terms, section 2-1203 applies only to parties, and does not allow nonparties to move for postjudgment relief." *MidFirst Bank*, 2016 IL App (1st) 150465, ¶ 31. A postjudgment motion by

a nonparty is "a nullity" and "not a proper postjudgment motion which would extend the time period for filing a notice of appeal to 30 days after the order disposing of it." *Id.*

¶ 59    Here, Simpson appeared in the circuit court and filed a motion to stay the eviction and for reconsideration, but she did not file an application or petition to intervene as a party and was therefore not a party to the circuit court litigation. The court denied Simpson's motion on the basis that she was not a party and had no standing. As Simpson was a nonparty, her reconsideration motion did not extend the time for filing a notice of appeal. Thus, assuming strictly *arguendo* that she had standing despite being a nonparty, she had to file her notice of appeal within 30 days of the court's dispositive order, which was either the March 8 grant of plaintiff's summary judgment motion or the March 10 denial of defendant's motion to dismiss. Her April 29 notice of appeal was therefore untimely filed and failed to vest this court with jurisdiction. "Although we recognize that [she] filed a notice of appeal within 30 days of the denial of her motion, her erroneous filing of the motion did not extend the time frame for appealing." *Id.*

¶ 60    We shall return to the question of standing in addressing the motions for sanctions.

¶ 61                                    B. Sanctions

¶ 62    Plaintiff and Simpson have filed motions for sanctions that we have taken with the case. Plaintiff claims that this appeal is frivolous and was brought for the improper purpose of harassing him, and he seeks his attorney fees and costs for defending the appeal. Simpson claims that plaintiff filed his brief after the time set by this court without an extension or our leave to file and that plaintiff made various false or unsupported representations to the court and seeks damages, attorney fees and costs, and an order placing her in possession of the Property.

¶ 63    Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994) provides for sanctions both for willful failure to comply with the rules governing appeals and for filing a frivolous appeal or taking some other action in bad faith or for an improper purpose. Willful failure to comply with the appeal rules

may be sanctioned by barring a party from presenting a claim or defense, entering judgment for the opposing party, dismissing an appeal or a portion thereof, striking portions of a party's brief, or imposing a fine. Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994).

> "An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

Sanctions for frivolous appeals or actions for an improper purpose include ordering a party to pay another party damages or reasonable costs or expenses "necessarily incurred by the filing of the appeal or other action," including reasonable attorney fees. *Id.*

¶ 64    Sanctions may be awarded against *pro se* litigants "under sufficiently egregious circumstances." *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 59. The purpose of Rule 375(b) on frivolous or improper appeals is to punish abusive conduct by litigants and their attorneys. *Stanila v. Joe*, 2020 IL App (1st) 191890, ¶ 26. Rule 375 does not direct this court to impose any particular sanction, and the imposition of sanctions is left entirely to this court's discretion. *Id.*; *Garlick*, 2018 IL App (2d) 171013, ¶ 61.

¶ 65    Here, we find that Simpson's appeal and her reconsideration motion in the trial court were frivolous, as they were not well-grounded in fact or warranted by law. Simpson reiterates defendant's unsupported claim that subpoenaing the Land Trust agreement was improper. That contention ignores the broad scope of discovery:

> "Except as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether

it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014).

Simpson also challenges plaintiff's specific performance claim. However, while the initial complaint raised specific performance and breach of contract claims, after defendant had the Land Trust agreement, he filed an amended complaint raising an ejectment claim and pleading his prior claims strictly in the alternative. Moreover, plaintiff sought, and the court granted, summary judgment on the ejectment claim alone. Thus, any flaws in plaintiff's specific performance claim are irrelevant to whether the summary judgment was erroneous.

¶ 66    Turning to the substance of plaintiff's ejectment claim, we find that he established—with the Land Trust agreement, the deed into the Land Trust, the deed from the Trust Company to himself, the undisputed fact that Frank was deceased, and Strong's 1994 death certificate—that he was the owner of the Property and defendant was not an owner, beneficiary, or power of direction holder of the Property or Land Trust. The elements of an ejectment action are that (1) the plaintiff was in possession of the premises on a day when he or she had title to the premises, (2) the defendant entered onto the premises, and (3) the defendant was unlawfully withholding possession of the premises from the plaintiff. 735 ILCS 5/6-109 (West 2018). However,

"[i]t is not necessary for the plaintiff to prove an actual entry under title, nor the actual receipt of any of the profits of the premises demanded; but it shall be sufficient for the plaintiff to prove a *right* to the possession of such premises at the time of the

commencement of the action, as heir, legatee, purchaser or otherwise." (Emphasis added.)

*Id.* § 6-119.

¶ 67    None of the arguments or documents from defendant or Simpson refuted plaintiff's *prima facie* case. The Trust Company letters urging Frank to renew the Land Trust did not establish that he failed to renew it. We note particularly that one such letter was sent in 1988 but the Trust Company was again reminding him to renew in 2008, implying that the Land Trust did not end in 1988 for failure to renew. Simpson notes the absence of Gregory's written direction or affidavit establishing that she directed the Trust Company to sell the Property to plaintiff. While it would have been better for plaintiff to provide that additional proof, the Trust Agreement, 1968 deed of the Property into the Land Trust, and 2020 deed of the Property from the Land Trust to plaintiff established his title over the Property, and defendant offered nothing refuting his title. As to Frank's will, the trial court correctly found that the Land Trust provision that Gregory was Frank's successor beneficiary and power of direction holder (Strong having predeceased Frank) governed, rather than the will's bequest to defendant alone. In other words, while Frank's will made defendant his sole heir and the probate order so found, the Property was not *in* Frank's estate upon his death for defendant to inherit but was in the Land Trust, of which Frank was beneficiary until he died and Gregory was the successor beneficiary.

¶ 68    For the same reasons that Simpson's reconsideration motion and appeal were frivolous, we find that Simpson's interest in the subject matter of the litigation—the Property—was not direct, immediate, or substantial so that she did not have standing to appeal as a nonparty.

¶ 69    That said, we believe that Simpson, arguing *pro se* as did defendant before her, argued in the trial court and appealed in good faith. We do not believe that Simpson (or defendant) argued merely to harass plaintiff but out of a wholly mistaken but understandable layperson's belief that defendant as Frank's widow and sole heir under his will was the owner of the Property and a belief

that subpoenaing the Land Trust agreement was somehow a breach of privacy. Defendant's repeated allegations that plaintiff engaged in fraud and similar improprieties are more problematic, as we see no merit in them, but we are reluctant to sanction Simpson on that basis. Though it is not decisive, we note that the trial court did not impose sanctions on Simpson though plaintiff requested them. We similarly shall not sanction Simpson.

¶ 70 Turning to Simpson's motion for sanctions, we reiterate our finding that the repeated allegations of fraud and misconduct by plaintiff were unfounded. That said, Simpson is correct that plaintiff filed his appellee brief late without an extension or leave from this court. The record having been filed on July 1, 2021, Simpson's appellant brief was due on August 5 and plaintiff's brief was due on September 9 but, after Simpson filed her motion for sanctions in early October 2021, plaintiff filed his brief on October 29, 2021, without obtaining an extension before then or leave to file at the time. However, the court granted Simpson leave to file a supplemental record *instanter* on September 22, 2021. See Ill. S. Ct. R. 343(a) (eff. July 1, 2008) (linking appellate briefing schedule to filing of the record). Also, plaintiff filed a motion to dismiss the appeal in mid-September 2021, which we took with the case later that month. Under such circumstances, while plaintiff should have sought an extension or leave to file his brief, we do not find that he acted willfully or egregiously. See *Garlick*, 2018 IL App (2d) 171013, ¶ 61 ("[w]e disagree that the violations are so egregious as to warrant sanctions"). We shall not sanction plaintiff.

¶ 71                                   IV. CONCLUSION

¶ 72 Accordingly, we dismiss this appeal for lack of jurisdiction and standing to appeal. We deny both plaintiff's and Simpson's motions for sanctions.

¶ 73 Appeal dismissed.

---

**No. 1-21-0488**

---

| | |
|---|---|
| **Cite as:** | *Kissoon v. Vlcek*, 2022 IL App (1st) 210488 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-9140; the Hon. Raymond W. Mitchell, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Cheryl Simpson, of Chicago, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Roenan Patt and Jonathan M. Weis, of Levin Ginsburg, of Chicago, for appellee. |

---